The first case on our calendar is Zelaya-Moreno v. William Barr. Morning, Counsel. Good morning, Your Honors and the Honorable Court. I represent Douglas Zelaya-Moreno in this matter, which is an Immigration Appeal from the Board of Immigration Appeals. I believe that there are three main issues in this case, in this case which regarded gang attack and recruitment. The main issues, as I understand them, is that my client had told the gangs that he did not believe the gangs were good for his town or for his country, and the question is whether this is political speech, which would allow him to obtain asylum, or if it is not. The second question then would be whether, if it is political speech, whether this is one central reason for his persecution, and also the third question would be whether he is eligible under the Convention Against Torture. My client had three interactions with gang members, and the first, he was on the street. Gang members came up to him and demanded that he join the gang, at which time he told them that he did not wish to do so because he felt the gangs were bad for his town and his country, at which point he was immediately beaten. Isn't any denial of – isn't any refusal to join a gang implicitly a statement that I don't think gangs are good? It is, but in this case, his mention – his saying directly to the gang members that why he believes that the gangs are bad for the area is not just a refusal to join the gang. It is also a political opinion expressing why he believes not just that he should not be joining the gang, but why the gangs are harmful to the entire country. Now, that is the crux of this case as to whether it is a political opinion. If I get mugged on the street and I say, you know, I really – I just think that muggings are bad for the city and for the country, and on those grounds, I decline to give you my wallet, that's political speech? In this case, I believe it is, and there is a deeper meaning to it. This is not just a group of young thugs on a street. MS-13, which is the gang that is identified in here, is an international – has been identified by the U.S. government as an international criminal organization. They have tentacles in the documentation which we have provided to the court, which was Exhibit 4 at the immigration court level. The U.S. State Department finds that the main principal human rights violations stem from widespread corruption in El Salvador. The gangs have their tentacles into the government itself. There are also news articles in that package of documents explaining that the gangs have been placing their own members in both the police and into the army. The government of El Salvador has been greatly corrupted by the gangs.  All right. Thank you. But going to my colleague's first question, wouldn't that mean that anyone who says I'm not joining a gang is expressing a political opinion? I mean, is it – is it enough just by virtue of not joining because of what you describe as the social-political context in the country that any refusal to join a gang is an expression of political opinion? Most people don't wish to join a gang because of their own beliefs, their own moral beliefs, their own decisions as to what they want their life to be like. But the political statement would go to the heart of what makes the gang run in El Salvador. And what political statement is that? The political statement is that the gangs are bad for the country. His town and for the country. His town and for the country. So the question comes down to really is this a political statement or not. I believe it is, and I believe it is because of the fact that the gangs are more than just street hoodlums. Why wouldn't – I'm sorry. You go ahead. I was going to say, so if the Corleone crime family asked me to take bribes in order to steer cases in their favor, and I said no, I decline to do that because I think organized crime is bad, that would be a political statement? It depends on how it was expressed, Your Honor. Really? So if I just said no, that would not be political speech. But if I say no, and let me explain why about the socioeconomical effects of organized crime in the late 20th century, that's political speech? Yes. Okay. That is how I see it. Because it goes deeper than just self-preservation and deeper than just a moral outrage towards – Well, we said we had a case, Zhang, that dealt with corruption in government. And we noted that a dispute can become political when the petitioner marshals support from similarly affected individuals, publicizes and criticizes endemic corruption. So the expression of opposition to corruption was not just about saving money for his business. It was a broader political statement against corruption. Is there anything like that in this record other than the petitioner's statement, the contents of what he said? I think Zhang actually buttresses my client's case in that they are saying that Zhang did, in fact, go beyond just saying, I do not wish to pay these bribes, and on to saying that this is a defect of our government. And I believe it is similar. Now, my client did not marshal any further support for it. He was, in fact, had his arm broken and went on after that. But I think it is the same thing. It's just that Zhang perhaps had a more organized approach to it. Do you want to say a moment – take a moment and talk about the Kath claim and the – I would like to if I have just a moment, Your Honor. The police were there when he was put – he hurled to the concrete in such a manner as to break his arm. He felt that he was empowered to say things about this in front of the gang because the police were there. And the police not only did not help him. They are the ones who brought him there. They are the ones who brought him home. And I know that torture, past torture, is not a guarantee that there will be future torture. But those police officers are likely still in place, and they still are – he is still a witness to their complicity into the gang's – Thank you. Thank you. Well, you reserve some time for rebuttal. We'll hear from the government. Good morning. Good morning. Thank you, Your Honor. May it please the Court. My name is Lori Warlick, and I am here on behalf of the United States Attorney General. The Court should deny this petition for review as the agency has actually appropriately determined that Mr. Zelaya merely stating that he would not join a gang because he felt that they are bad for the town and the country did not actually constitute a political opinion. But moreover, even if it were political, that's not what motivated these gangs to attack him. The evidence overwhelmingly indicates that it was his refusal to join that motivated his attacks. And finally, substantial evidence supports the agency's denial of Mr. Zelaya's cat claim, given that there is no indication in the record that he would like to be more than likely subject to torture in El Salvador. Well, he was found credible, was he not? Yes, ma'am. And he described this attack with police officers in the room, and in fact, as counsel pointed out, the police officers actually brought him to the place where he was attacked. How could he expect any protection from police if he was sent back? Isn't that the gravamen of the cat claim, that he could not be protected in the future? Well, there are several elements to the cat claim that would have to be established, first being government acquiescence. And plainly, these three police officers have been corrupted. But I will note that in this town, Mr. Zelaya had the mayor submit a letter on his behalf, sent to the immigration court, and the evidence indicates that Mr. Zelaya testified that he thought the mayor and deputy mayor perhaps sometimes endangered themselves when they sort of try to interfere with this gang activity, which to me reflects that the leadership of this town is actually not in cahoots, if you will, with the gang, so to speak. And in fact, this town is but one town in this larger country, in El Salvador. And the speculation about how the government, or excuse me, the police officers, or the mayor, or the government of this town could know that he had returned, or that he had left, is in fact, as I said, speculative. His family still lives there. And every time he went outside, they seemed to have found him. So are you saying it's okay, we send him back if he never was able to leave his home? No, of course, I would never suggest that he remain inside to protect himself. But I will note that this was three incidents, and they were each about two months apart, and only during, I believe he said he stayed home after the second incident. But they approached him these three times, and it doesn't appear that they have gone back to his home to sort of either threaten his younger brother, who we know gangs are typically more interested in the younger men in some of these towns, but also haven't addressed his sisters or his family, and Mr. Zelaya testified that in his town, the gang is interested in everyone. That they would like anyone and everyone to join them, including adults, women, children, everyone. But the fact that they have not gone to his home, or threatened anyone that he knew of, that he could speak to, certainly undermines the argument that when he returns, he more likely than not would be subject to actual torture, by or with the acquiescence of the government there. We have no reason to believe that those police officers are not still on the force. Is that correct? We have no evidence. There's no evidence that they are. Is it true that the country report says that MS-13 has now infiltrated the state security forces? Isn't that one of the conclusions of that report? Yeah, the State Department country report did indicate that these gangs have corrupted certain individuals as part of their activities. But- State security forces is what they say. Yes. That sounds to me like the police. And other criminal elements frequently corrupt certain high level officials and security officers throughout the world, honestly. And just that alone, without any sort of evidence establishing any sort of likelihood to meet the burden of proof here, would certainly cut the other way. Do we really have enough from the BIA in terms of the way, in terms of analysis of this political opinion claim? I mean, as I look at the opinion, they just seem to be saying, refusing to join a gang without more does not constitute an opinion, a political opinion. And gangs are criminal organizations and not political or governmental organizations. But based on the exchange we've had this morning, does that suggest there needed to be more contextual analysis? Because certainly opposition to a gang could rise to the level of a political opinion, given the right surrounding context and the right sort of opposition. Well, of course, I noticed that the board did not provide citations to this court's case law or many of theirs. But the statements that they provided are, in fact, from case law. That statement that opposition to gang activity is not alone a political statement is from a matter of EAG. And also a matter of INSV Elias Zacharias, the Supreme Court decision. And this statement that it must be directed at a government organization or regard a government organization is consistent with this Court's statement in Zhang that it must be, as I said, directed toward a government institution. And I don't think that's quite as narrow as the statement may be. It needs to at least regard government action, government involvement, a previous government. Even the examples that Mr. Ross and Petitioner provided in the brief said, you know, you can talk about busing activity or whether certain statutes should be allowed to be presented in the public, but even those involve government action of some sort, whether it's the current government or a prior government. And in this case, the gangs are, in fact, essentially apolitical. They don't care what the government does. They don't care what the government says. They're interested in guns, money, and recruitment. And they want to – they do want to wield power, but until they – there's no, so to speak, a coup here. There's no overturning the government where they are actually acting as a government authority. And here the government tolerates it because they have no way not to. Well, there's also evidence in the record that they have made many efforts to combat these gangs. I understand it's a hard fight. I'm sorry? Ineffective efforts. At times, I believe, yes, Your Honor, it is. Sadly, it is. But – and I don't – let's see. I would turn to the example of the mob. I can turn and say – or another prolific criminal organization. I can say I am against drug dealers, even prolific drug dealers that work in my neighborhood and the surrounding neighborhoods, but that isn't virtually an apolitical statement. That has nothing to do with what the government does. Now, change that. Let's say I said I think the government isn't doing enough to combat these criminal – this criminal element. That would be a political statement because it has to do with what the government is doing or not doing. And here – But isn't that implicit when Mr. Zelayaev says this is bad for our town and our country? Isn't it implicit that he's saying the government has been ineffective in protecting all of us from this gang which has tentacles into every element of life in my little town? Well, that may be what he meant, but that's not what he said. The statement is far more general. No, I'm asking if it was – if it is a fair inference to conclude when he said this is bad for the town and the country that the fair inference is that the country, the legitimate so-called government of the country, can't protect me from this. Well, that may be the inference that someone might take, but here in this record it's clear that that's not what these gang members took from his statement. Or at least they didn't care what his statement was. Right. The gang members, they don't – right. They – at every turn, when they first approached him, they said, join us. And I can give you the transcript sites and everything, but the first – when they first approached him, they said, join us. He said, no, because you're harmful to my town or country. They beat him up and said, join or leave this town. They didn't say anything about his opinion, political or not. When they came back two months later, these three apparent police officers took him to this gang house. The gang leader said – didn't say anything about his opinion and instead said, join us. And he said, no. Three – he was beaten up by apparently five gang members. Of course, it's not anything anyone would wish on someone. But the gang leader said, stop. And instead of saying, you think we're bad for the country, we'll be bad for you. Or anything to even reflect that they even cared about it, let alone whether it was political. Instead, he said immediately, you should really consider joining us. And then when those officers took him back home, they didn't say anything about, look what we can do, we're cops, we can harm you. They said, you really should think about it. It would be better for you, basically. You have to if you join. You have to join. And then when they finally came back the last time – I understand how he might not want to turn to those police officers when he was back in El Salvador. I would understand he would not want to go to those three. But he apparently has a friend in the mayor and he could at least go to him. Now, in the last time, they said, when he finally got home and he went to the doctor, he came back and they said – asked if he had decided to join. Otherwise, they would kill him. They still didn't say anything about his opinion. If I may have a moment to conclude, Your Honor. Sure. The last point I'll make, besides the general policy point about the – what this would do to establish a political opinion based on gang activity in an entire region, I would just like to point the Court to page 112 of the transcript when the IJ asked him, so why do you think they got mad at you? Do you know? And he said, because I didn't want to join. He did not say it was because of why he did not want to join. For that reason, I ask the Court to deny the petition for review. Thank you. Thank you, counsel. Mr. Ross, you have reserved three minutes for a rebuttal. Thank you, Your Honors. Just to the last point the counsel had made, the respondent in this – I'm sorry, the – Mr. Zelaya – I'm still used to calling him Respondent from the Immigration Court – Mr. Zelaya testified for a couple of hours. He may have misspoken. And people do get nervous when they are in the – when they are in the courtroom in regards to him saying that it's only because they – he had refused to join the gang. He had three interactions with his gang. Twice he said to them, I do not agree with the gangs because they are bad for my town and country. Both times he was immediately attacked. The third time that he – that the gang – which was the last time the gang said you need to join us, he did not say anything, and he was not attacked. To me, that appears to be a direct correlation. The immigration judge noted – this is an immigration judge who has done 15 years of these – of these types of cases. The gangs will usually use what he calls the carrot and the stick. They will usually say, why don't you join us because it will be good for you, you will make money, you will be protected. They didn't do that. They came to him and told him to join, and then they beat him. But they never told him to shut up, right? They never said – No, no. They did not tell people that we're bad for the town and the country. They did not say anything. They merely attacked him. He did have – he does have a friend in the mayor. The entire security apparatus is compromised there. I don't think having one friend that was the mayor of the town is going to protect him. One thing about the Convention Against Torture claim is that the BIA even said that fracturing his arm is not torture. I can't understand how that could not be considered torture. I believe that he has been tortured in the past. And in terms of everybody in town, they don't ask for them all to join. He had said, actually, that they all have problems with the gangs. And I thank the Court for its time. Thank you. Thank you both. I will reserve the seat.